FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 02 2018

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| BEAR CLAW CONSTRUCTION MANAGEMENT, LLC, § § § Plaintiff, § § v. § NATIONWIDE MUTUAL INSURANCE § COMPANY and ROYAL OVERHEAD § DOOR, INC., § § Defendants. § | CIVIL CASE NO. 4:18cv1-JM |

## PLAINTIFF BEAR CLAW CONSTRUCTION MANAGEMENT, LLC's ORIGINAL COMPLAINT

Plaintiff Bear Claw Construction Management, LLC (hereinafter "Plaintiff" or "Bear Claw") files this complaint against Defendants Nationwide Mutual Insurance Company and Royal Overhead Door, Inc., and in support thereof, respectfully shows as follows:

### I. PARTIES

1. Plaintiff Bear Claw Construction Management, LLC is a company registered under the laws of the State of Missouri with its principal place of business in Kansas City, Missouri. Bear Claw is therefore a citizen of the State of Missouri.

2. Defendant Nationwide Mutual Insurance Company ("Nationwide") is incorporated in Ohio and has its principal place of business in Columbus, Ohio. Nationwide Mutual Insurance Company may be served with process through its Registered Agent for Service listed as Corporation Service Company, 300 Spring Building, Suite 900, 300 Spring Street, Little Rock, Arkansas, 72201.

This case assigned to District Judge Moody
and to Magistrate Judge Volpe

3. Defendant Royal Overhead Door, Inc. ("Royal") is an Arkansas corporation with its principal place of business in Mabelvale, Pulaski County, Arkansas. Royal may be served with process through its Registered Agent for Service listed in the records of the Arkansas Secretary of State as Gregory Guy Smith, P.O. Box 386, Mabelvale, Arkansas.

## II. JURISDICTION

4. There is complete diversity of citizenship among and between the parties to this civil action, and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000). As such, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5. This insurance coverage lawsuit concerns an underlying claim that occurred in Pulaski County and within the geographic territory of Division 4 of the Eastern District of Arkansas. A number of material facts giving rise to this cause of action occurred within Pulaski County and thus within the territory of Division 4 of the Eastern District of Arkansas. Accordingly, venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391.

## III. FACTUAL BACKGROUND

6. This is an insurance coverage dispute regarding coverage available to Bear Claw as an additional insured under a commercial general liability policy issued by Nationwide to Bear Claw's subcontractor, Royal, who entered into a contract with Bear Claw and agreed to provide additional insured coverage to Bear Claw.

7. Bear Claw served as the general contractor on a construction project at the Forest Place Apartments in Little Rock, Arkansas. Bear Claw entered into a subcontract agreement with Royal to provide and install 18 complete fireplace and chimney packages at the complex. Reference, Exhibit A, Subcontract (to be produced by disclosure). The Subcontract agreement required Royal to maintain general liability insurance naming Bear Claw and the property owner

as additional insureds. *Id.* The Subcontract agreement also included a hold harmless and indemnification provision in favor of Bear Claw. *Id.*

8. Royal procured commercial general liability insurance through Nationwide under policy number ACP GLO 5616103771 with effective dates of May 1, 2013 to May 1, 2014 (the "Nationwide Policy"). Reference, Exhibit B, Policy (to be produced by disclosure). Bear Claw is an additional insured under the Nationwide Policy pursuant to the Contractors Enhancement Endorsement wherein Nationwide agreed to include as an insured "Any person or organization with whom you have agreed in a valid written contract or written agreement that such person or organization be added as an additional insured on your policy during the policy period shown in the Declarations …" *Id.* The Subcontract is a "written contract" that required Royal to name Bear Claw as an additional insured.

9. Nationwide agreed under the Insuring Agreement of the Nationwide Policy to pay those sums that Bear Claw, as the insured, became legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. Reference, Exhibit B, Policy (to be produced by disclosure). The Nationwide Policy defines "property damage" to mean "physical injury to tangible property, including all resulting loss of use of that property" as well as "loss of use of tangible property that is not physically injured." *Id.*

10. Royal also provided Bear Claw with a Certificate of Liability Insurance issued by or on behalf of Nationwide showing general liability coverage under the Nationwide Policy in favor of Bear Claw as an additional insured in the amount of $1,000,000 per occurrence and a products and completed operations aggregate limit of $2,000,000. Reference, Exhibit C, Certificate of Insurance (to be produced by disclosure).

11. A fire occurred at the apartments on December 21, 2014 caused, in whole or in part, by an improperly installed chimney flue system attributable to work performed by or on behalf of Royal. The property owner, Forest Place Apartments, looked to Bear Claw (as the general contractor) to repair the damage caused by the fire. Three tenants also sustained damage to their personal contents as a result of the fire.

12. In addition, the property manager of the Forest Place Apartments, Maxus Properties, Inc., made demand upon Bear Claw for lost rental income, fees, and expenses related to lost content and storage fees totaling $26,150.66.

13. Bear Claw sought coverage as an additional insured under the Nationwide Policy. Nationwide accepted the tender without reservation of rights in an email dated January 8, 2015. Reference, Exhibit D, Email from Nicholas S. Hales (to be produced by disclosure). Nationwide and Bear Claw actively negotiated the claim to determine the cost of repairs, and Nationwide ultimately agreed to an amount of $195,734 in settlement of the structural damage claim. Reference, Exhibit E, Estimate of Damages (to be produced by disclosure). The property manager, Maxus Properties, Inc., issued a Notice to Proceed to Bear Claw on or about January 15, 2015 requesting that Bear Claw begin making the repairs as soon as possible.

14. Relying upon the agreement with Nationwide, Bear Claw proceeded to make the repairs itself for the damage caused by the fire. Further, Bear Claw incurred additional out of pocket carrying costs associated with the repairs to the complex in the amount of $22,150.66. Thereafter, Nationwide reneged on its agreement in June 2015 and refused to pay the costs of repair. Reference, Exhibit F, Email from Paula Jones dated June 11, 2015 (to be produced by disclosure)..

15. Bear Claw has fully complied with the terms and conditions of the Nationwide Policy, including any conditions precedent.

## IV. FIRST CAUSE OF ACTION
### (Declaratory Judgment Against Nationwide)

16. Bear Claw re-alleges, re-asserts, and incorporates by reference the allegations contained in the proceeding paragraphs as though fully set forth herein.

17. Pursuant to the Arkansas Declaratory Judgment Act, Bear Claw is entitled to a declaration that the Nationwide Policy provides coverage to Bear Claw as an additional insured, and Nationwide has a duty to indemnify Bear Claw for damages related to the fire at the Forest Place Apartments on December 21, 2014.

18. In the alternative, Bear Claw asserts that the Nationwide Policy is ambiguous and must be interpreted in favor of Bear Claw as the additional insured on the Nationwide Policy and against Nationwide as the sole drafter of the terms of the policy.

## V. SECOND CAUSE OF ACTION
### (Breach of Contract Against Nationwide)

19. Bear Claw re-alleges, re-asserts, and incorporates by reference the allegations contained in the proceeding paragraphs as though fully set forth herein.

20. Insurance policies are contracts between the insurer and the insured. Under the terms of the Nationwide Policy, Nationwide contracted to indemnify Bear Claw as an additional insured for, among other things, damages because of "property damage."

21. A fire occurred in the attic at the Forest Place Apartment complex on December 21, 2014. The fire was caused, in whole or in part, by the acts or omissions of Royal. Specifically, Royal failed to properly install fireplace flues during its work on the project,

PLAINTIFF'S ORIGINAL COMPLAINT    Page 5
vl

leaving a one foot gap between the chimney flue and the cap on the roof of the apartment building. This gap allowed for sparks to escape into the attic of the buildings during the normal and customary use of the fireplaces in the apartments.

22. Bear Claw promptly informed Nationwide of the damage to the complex and made demand upon Nationwide under the Nationwide Policy. Nationwide investigated the claim and agreed that the resulting damages were covered by the Nationwide Policy. Nationwide therefore accepted Bear Claw's tender on January 8, 2015. Nationwide later reneged on this promise to provide coverage for this claim to Bear Claw and refused to pay the costs of repair. As a result of Nationwide's failure to indemnify Bear Claw in accordance with the terms of the Nationwide Policy, Bear Claw has sustained damages in the amount of $245,474.34.

## VI. THIRD CAUSE OF ACTION
### (Promissory Estoppel Against Nationwide)

23. Bear Claw re-alleges, re-asserts, and incorporates by reference the allegations contained in the proceeding paragraphs as though fully set forth herein.

24. After receiving proper notice of the fire that occurred on December 21, 2014, Nationwide accepted the tender by Bear Claw. Thereafter, Nationwide Commercial Claims Specialist, Ed Gartrell, investigated the claim on or about February 11, 2015. Nationwide and Bear Claw agreed upon the structural repairs necessary to restore the apartment complex following the fire. Nationwide advised Bear Claw of the agreed-upon amount of the covered damages on or about March 2, 2015. Bear Claw proceeded to complete the repairs in reliance upon Nationwide's promises. After the repairs were complete and funds expended by Bear Claw, Nationwide informed Bear Claw on June 11, 2015 that coverage had been denied under the Nationwide Policy.

25. Nationwide's promises induced action by Bear Claw, and Nationwide knew or should have reasonably known that its actions would induce Bear Claw to take actions to expend funds to repair the damages resulting from the fire. Nationwide informed Bear Claw of its denial of coverage only after Bear Claw had completed the repairs to the complex in reliance upon Nationwide's acceptance of the tender of coverage from Bear Claw and the parties' agreement on the cost of repairs.

26. As a result, Bear Claw suffered damages in the amounts pleaded above plus punitive damages as well as its costs, fees, and expenses incurred herein.

## VII. FOURTH CAUSE OF ACTION
(Attorneys' Fees and 12% Penalty Against Nationwide)

27. Bear Claw re-alleges, re-asserts, and incorporates by reference the allegations contained in the proceeding paragraphs as though fully set forth herein.

28. Pursuant to ARK. CODE ANN. § 23-79-208, Nationwide is liable to Bear Claw for Bear Claw's costs and expenses incurred, including court costs and reasonable attorneys' fees, in bringing this action and twelve percent (12%) penalty interest upon the amount of the loss.

## VIII. FIFTH CAUSE OF ACTION
(Alternative Breach of Contract Claim Against Royal Overhead Door)

29. Bear Claw re-alleges, re-asserts, and incorporates by reference the allegations contained in the proceeding paragraphs as though fully set forth herein.

30. Under the Subcontract, Royal was obligated to obtain commercial general liability insurance covering Bear Claw as an additional insured. To the extent Royal failed to maintain the specified insurance or to the extent Bear Claw is found not to be an additional insured under the Nationwide Policy, Royal has materially breached its insurance obligations under the Subcontract.

31. As a result of Royal's failure to obtain the required insurance and/or name Bear Claw as an additional insured, Bear Claw has suffered actual damages in an amount exceeding the jurisdictional limits of this Court and seeks to recover such sums from Royal.

## IX. JURY DEMAND

32. Bear Claw demands a trial by jury on all issues of fact, if any.

## X. *[FOR THE COURT'S EYES ONLY. NOT FOR THE JURY]*

33. *This is a subrogation action filed by XL Specialty Insurance Company, who issued a policy of insurance to Bear Claw. Pursuant to this insurance policy, XL paid Bear Claw for insured damages stemming from the loss made the basis of this lawsuit. XL is therefore subrogated to Bear Claw's rights to the extent of its insurance payments and is bringing this action in the name of Bear Claw.*

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Bear Claw Construction Management, LLC prays that Defendants be cited to appear and answer herein, and that the Court enter judgment in Bear Claw's favor and against Nationwide Mutual Insurance Company, awarding Bear Claw (1) a determination form the Court that the Nationwide Policy provides coverage to Bear Claw as an additional insured and Nationwide has a duty to indemnify Bear Claw for damages related to the fire at the Forest Place Apartments on December 21, 2014; (2) damages arising from breach of the Nationwide Policy; (3) damages on the basis of promissory estoppel; (4) an additional twelve percent (12%) interest pursuant to Ark. Code Ann. § 23-79-208; and (5) attorneys' fees under Arkansas law. Alternatively, Bear Claw prays that the Court enter judgment in Bear Claw's

favor and against Royal Overhead Door, Inc. for breach of the Subcontract agreement. Bear Claw further prays for all other proper relief to which Bear Claw may be justly entitled.

                                             Respectfully submitted,

Jeffrey C. Elliott
Arkansas Bar No. 85049
Oklahoma Bar No. 014891
Texas Bar No. 06539500

ELLIOTT LAW FIRM
5519 Plaza Drive
Texarkana, Texas 75503
Phone: 903-838-1098
Fax: 903-838-1204
jeff@jeffelliottlaw.com

ATTORNEY FOR PLAINTIFF